Opinion issued February 26, 2019



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00494-CV

_____

**ROSE TURNER AND STEPHANIE MOORE, Appellants**

**V.**

**LINDA WILLIAMS, ANDREW ROSS, AND STEVEN A. SINKIN, Appellees**

---

On Appeal from the 247th District Court
Harris County, Texas
Trial Court Case No. 2016-17907

---

## MEMORANDUM OPINION

Appellants Rose Turner and her daughter Stephanie Moore sued Linda Williams and her attorneys, Andrew Ross and Steven A. Sinkin, to contest the enforcement of an order for child-support arrearages. Rose asserted that her ex-husband, Charles Turner, was the sole child-support obligor and that Williams

improperly levied property that she and Moore owned. They sued for a cancellation of liens and levies, a declaratory judgment regarding a previously entered turnover order, a statutory claim regarding the filing of fraudulent liens, sanctions, and a permanent injunction. Williams, Ross, and Sinkin filed special exceptions, which asserted that Ross and Sinkin were immune from suit because all of Rose Turner and Moore's claims against them were based on Ross and Sinkin's actions taken while representing a client in litigation. The trial court severed a claim for determination of the ownership of property that had been levied, and it dismissed all the other claims against Williams, Ross, and Sinkin based on their special exceptions.

On appeal, Rose Turner and Moore challenge the dismissal, and they raise issues regarding: (1) a protective order granted in favor of Ross and Sinkin; (2) the award of attorneys' fees; and (3) the effect of a Rule 11 agreement.

We conclude that the trial court improperly granted the special exceptions and dismissed the claims against Williams because the special exceptions did not identify with particularity the deficiency in the pleadings and did not show as a matter of law that claims against her could not proceed. We also conclude that the court erred by dismissing the claim for sanctions against Ross and Sinkin without giving Rose Turner and Moore an opportunity to replead. We reverse the judgment of dismissal as to those claims, and we affirm the judgment of dismissal as to the

2

remaining claims against Ross and Sinkin, which are barred by attorney immunity. We also reverse the protective order and the award of attorney's fees.

## Background

Charles Turner and Linda Williams are the parents of Mario and Cecil Turner. At all times relevant to this appeal, Mario and Cecil were adults. In May 2010, after a hearing, Williams obtained an order for child-support arrearages in the amount of $117,622.32. The order awarded Williams $8,000 in attorney's fees, as well as contingent appellate attorney's fees. When the order on arrearages was entered, Charles Turner was married to Rose Turner.

In July 2010, the court entered a turnover order, which provided that Williams was entitled to "issue child support liens and levies in the name of" Charles's then-wife, Rose Turner.[1] The following month, Right Choice Credit Union received a notice of child-support lien, which stated that it attached to "all nonexempt real and personal property of Charles Edward Turner and/or Rose Turner" including "any other instrument of deposit in which Charles Edward Turner and/or Rose Turner have a beneficial ownership . . . ." Rose Turner moved for "the immediate release of a lien upon her bank account" because Charles was

---

[1] The appellate record does not include the request for a turnover order, any response, or a transcript from any hearing on the turnover order. The turnover order enjoined Charles from "conveying, encumbering, or transferring any non-exempt property or assets to any third parties" and from "abandoning, waiving, and or transferring any non-exempt property or assets to third parties" until the judgment for arrearages, including attorney's fees and court costs, was fully satisfied.

3

the obligor, not her. The trial court denied her motion, and in October 2010, Rose and Charles divorced.

According to pleadings filed in the underlying case, in December 2010 and March 2011, the trial court issued additional turnover orders. The appellate record does not indicate what happened between March 2011 and March 2016, when notices of a child-support lien were sent to 59 banks and financial institutions.

In early March 2016, Wells Fargo was served with a notice of child-support lien and a notice of child-support levy. The notices identified both Charles Turner and Rose Turner as obligors.

The notice of child-support levy directed Wells Fargo to pay Linda Williams from assets of Charles Turner and Rose Turner that it controlled "not earlier than the 15th day or later than the 21st day after the date of delivery of the notice" unless: "a) You are notified by the attorneys for Linda Williams that Obligors have paid the arrearages or made satisfactory arrangements for payment of the arrearages; b) The Obligors file suit to stop the levy and notify you of the suit." The notice also identified the scope of the levy:

> This child support levy attaches to all nonexempt real and personal property of **Charles Edward Turner and/or Rose Turner**, including any and all accounts in your financial institution, including but not limited to: Any type of a demand deposit account, checking or negotiable withdrawal order account, savings account, retirement account, time deposit account, money market mutual fund order account, certificate of deposit, or any other instrument of deposit in which **Charles Edward Turner and/or Rose Turner** have a

4

beneficial ownership either in its entirety or on a shared or multiple party basis, including any interest and dividends payable to the accounts.

The notices informed Rose Turner that she could dispute the arrearage and the levy by filing suit under Texas Family Code § 157.323 within ten days of receipt of the notices.

Rose Turner and Moore contend that two days after receiving the notice of child-support lien, Wells Fargo deducted the entire balance of their account in compliance with the notice of lien. The record does not indicate how much money was in the account, whether it was placed in a holding or suspense account, or whether it was transferred to Williams.

Rose Turner and Moore filed suit against Williams, Ross, and Sinkin, asserting five causes of action: (1) release of the child-support liens and levies; (2) declaratory judgment that (a) the turnover order is void because Rose Turner was not a party to the turnover proceedings; (b) Williams is not entitled to issue liens and levies in Rose Turner's name; and (c) the liens and levies already issued against Rose Turner are void; (3) violation of Chapter 12 of the Civil Practice and Remedies Code by filing fraudulent liens; (4) request for permanent injunction; and (5) a motion for sanctions. The sanctions motion asserted that Williams, Ross, and Sinkin misrepresented Rose Turner's status as an obligor as to the child-support arrearages.

5

In late March 2017, after a mediation that did not resolve the controversy, the parties entered into a Rule 11 agreement, which was signed by Ross on behalf of himself, Williams, and Sinkin, and by Roger Jain on behalf of his clients, Rose Turner and Moore. The Rule 11 agreement was filed with the district clerk on March 31, 2017. Around the same time, Rose Turner and Moore served discovery on Ross and Sinkin.

The Rule 11 agreement provided that the parties would attempt to agree upon undisputed facts and legal questions by a date certain, and if they could agree, they would submit the legal questions, jointly, to the trial court for determination before further mediation.[2] However, if they were unable to agree on which legal questions required resolution by the trial court, the parties would file competing motions for summary judgment to narrow the issues in the litigation. The agreement required the parties to work in good faith toward resolution of their

---

[2] The Rule 11 agreement provided that if, by July 14, 2017, the parties agreed which legal questions required a ruling and which facts were undisputed, then certain deadlines set forth in the Rule 11 agreement applied. These included deadlines to (a) amend pleadings (July 14, 2017), (b) file position briefs (August 4, 2017), (c) file reply briefs (August 18, 2017), and (d) file a motion to request pretrial rulings under Rule 166 (August 22, 2017).

However, if by July 14, 2017, the parties did not agree on which legal questions required a ruling and which facts were undisputed, then other deadlines set forth in the Rule 11 agreement applied. These included deadlines to (a) file motions for summary judgment (August 4, 2017), (b) file responses to motions for summary judgment (August 18, 2017), (c) set the motions for hearing at mutually convenient time between September 5, 2017 and November 3, 2017 (August 18, 2017), and (d) within 5 business days of receiving the court's order on pretrial rulings, submit dates for mediation within 60 days of receipt of the court's order.

dispute and to comply with the deadlines in the agreement, which ranged from July to November 2017.

About two weeks after the Rule 11 agreement was signed, Williams, Ross, and Sinkin filed a request for an order of protection from discovery requests, a motion to strike Rose Turner and Moore's pleading, and special exceptions. The request for a protective order sought protection for Ross and Sinkin from discovery based on their assertion that attorney immunity barred the claims against them. They also sought attorney's fees, but the motion did not identify any authority on which the request was based.

On April 24, 2017, the trial court held a hearing on the motion to strike and the special exceptions. The trial court granted the motion and dismissed with prejudice all of the claims against Ross and Sinkin as "judicially privileged and immune from liability." The court also dismissed with prejudice all claims against Williams except for a claim under section 157.326 of the Texas Family Code.

Rose Turner and Moore appealed.

## Analysis

Rose Turner and Moore have nominally raised seven issues. We begin by addressing one issue that challenges the trial court's judgment, generally, and then we analyze the court's ruling on the special exceptions.

## I.    Rule 11 agreement

In their seventh issue, the appellants contend that the trial court abused its discretion by failing to enforce the parties' Rule 11 agreement and granting the appellees' motion to dismiss.

Texas Rule of Civil Procedure 11 states: "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. An effective Rule 11 agreement consists of "a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (quoting *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)).

Rule 11 agreements are "contracts relating to litigation, and thus we construe them under the same rules as a contract." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018). A trial court has a ministerial duty to enforce a valid Rule 11 agreement. *Id.* If an enforceable Rule 11 agreement can be given a certain or definite legal meaning or interpretation, it is not ambiguous and we construe it as a matter of law. *Id.* at 561; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). But a court may not "give a

Rule 11 agreement greater effect than the parties intended." *Shamrock Psychiatric Clinic*, 540 S.W.3d at 560–61.

The Rule 11 agreement was valid because it was signed by the parties and filed with the court. It set forth a plan for resolution of the issues that remained, and it established deadlines for exchanging information or filing pleadings or motions with the court. It provided two alternative schedules. One schedule applied if the parties agreed, by a specified date, to what legal issues required a ruling from the court. The other schedule applied if the parties failed to reach such an agreement. If the parties agreed to the relevant legal questions, they would file an agreed motion for pretrial rulings under Texas Rule of Civil Procedure 166; if they did not agree, they had the option to file competing motions for summary judgment. *See* TEX. R. CIV. P. 166 (authorizing the court to hold a pretrial conference to consider a variety of matters including "[a]ll pending dilatory pleas, motions, and *exceptions*.") (emphasis added).

The Rule 11 agreement does not say that the procedures set forth in it are exclusive. It does not prohibit a party from filing a motion for a pretrial ruling in his or her individual capacity in addition to the contemplated agreed motion for pretrial rulings. On appeal and in the trial court, the appellants argued that the court erred by ruling on the appellees' motion to dismiss. They argued that the motion to dismiss was filed outside the scheduled time periods in the Rule 11 agreement and

was thus precluded by the Rule 11 agreement. Because the agreement does not prohibit the filing of a contested motion for pretrial rulings under Rule 166(a), we conclude that the court did not abuse its discretion by ruling on it. *See, e.g.*, *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 310–11 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (Rule 11 agreement that provided for filing of a first amended petition did not prohibit the filing of a second amended petition because it did not expressly prohibit it).

## II.    Special exceptions differ from motions for summary judgment.

Appellants argue that the special exceptions should be construed as a motion for summary judgment. They contend that some of the grounds for dismissal raised by the special exceptions required presentation of evidence, and they argue that the dismissal on special exceptions should be treated as a summary judgment. The appellants further argue that the trial court improperly granted summary judgment without following summary judgment procedures.

The nature of a motion is determined by its substance, not its caption or title. *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 72 (Tex. 2008); *Janner v. Richardson*, 414 S.W.3d 857, 859 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (Rule 71—misnomer of pleading rule—"permits a trial court to consider a motion or other filing according to its substance, even if it is not accurately titled"); *see also* Tex. R. Civ. P. 71. The special exceptions in this case expressly and

10

repeatedly state that the appellees "specially except" to various aspects of the appellants' first amended petition. The special exceptions made no reference to any summary judgment rule or standard. No evidence was attached to the special exception. We conclude that the substance of the filing was a special exception. *See Brookshire Grocery*, 250 S.W.3d at 72; *Janner*, 414 S.W.3d at 859. To the extent that the appellants have argued that the special exceptions should be construed as a motion for summary judgment because the contentions raised by the special exceptions can properly be raised only by way of a motion for summary judgment, we construe their appellate arguments as a challenge to the trial court's action as not supported by a proper special exception. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver.").

## III.   Dismissal based on special exceptions

Rose Turner and Moore alleged five claims against Williams, Ross, and Sinkin. The court carved out a claim under the Family Code for determination of how much of the levied account belonged to Rose Turner and Moore, as opposed to Charles Turner. This carved-out claim was arguably a subpart of the claim for release and cancellation of the liens and levies which also sought a partition of the levied property. This claim was not dismissed on special exceptions. Thus, the claims that were dismissed as to Williams and her attorneys were: (1) the

remainder of the claim for release and cancellation of the liens and levies; (2) a declaratory-judgment action; (3) a statutory claim for the filing of fraudulent liens; (4) a request for permanent injunction; and (5) a motion for sanctions based on the filing of liens and levies that stated Rose Turner was an obligor.

Rose Turner and Moore raised four issues on appeal generally challenging the trial court's dismissals based on special exceptions.[3] The first issue posits that the trial court erred or abused its discretion by dismissing the appellants' claims based on the appellees' special exceptions. We begin with an overview of the law pertaining to special exceptions. Because Ross and Sinkin pleaded some special exceptions that were distinct from those pleaded by Williams, we will consider them separately.

---

[3]     Issues Presented

1.  Did the trial court commit error by signing the June 2, 2017 Order Re: Hearing of April 25, 2017?

2.  Did the trial court commit error by dismissing Appellants' causes of action through special exceptions?

3.  Did the trial court commit error by refusing to treat Appellees' special exceptions as a request for summary judgment, when Appellees' special exceptions were based upon affirmative defenses that were not established as a matter of law?

4.  Did the trial court abuse its discretion by sustaining Appellees' special exceptions and dismissing Appellants' causes of action without first giving them an opportunity to amend their pleading?

. . . .

**A.    Special exceptions and standards of review**

**1.    Notice pleading and defective pleadings**

"Texas follows a 'fair notice' standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy" and what evidence will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). A party "who wishes to complain about a defect or obscurity in a pleading is required to identify the defect or obscurity in writing and to bring the special exception to the trial court's attention before a judgment is signed." *Neff v. Brady*, 527 S.W.3d 511, 527 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see* TEX. R. CIV. P. 90, 91. "The purpose of a special exception is to compel clarification of pleadings when the pleadings are not clear or sufficiently specific or fail to plead a cause of action." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (citing *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998)); *Alpert v. Crain, Caton & James, P.C*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("A special exception is a proper method to determine whether a plaintiff has pleaded a cause of action.").

**2.    Special exceptions in the trial court**

"A special exception shall not only point out the particular pleading excepted to, but it shall also point out intelligibly and with particularity the defect,

omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to." TEX. R. CIV. P. 91. "If special exceptions lack specificity in pointing out how the plaintiff's allegations are faulty, they constitute a general demurrer, and general demurrers are prohibited by the Rules of Civil Procedure." *Owen v. Option One Mortg. Corp.*, No. 01-10-00412-CV, 2011 WL 3211081, at *6 (Tex. App.—Houston [1st Dist.] July 28, 2011, pet. denied) (mem. op.); *see* TEX. R. CIV. P. 90; *see also Castano v. San Felipe Ag., Mfg., & Irrigation Co.*, 147 S.W.3d 444, 453 (Tex. App.—San Antonio 2004, no pet.) (holding that special exceptions failed "to state with specificity the elements lacking in [plaintiff's] petition" and thus was general demurrer prohibited under rules; grant of special exceptions would allow defendants "to circumvent the protective features of the special exception procedure"). "An exception generally alleging a petition fails to state the elements of a cause of action or give fair notice of the claims is prohibited by the rules." *Muecke v. Hallstead*, 25 S.W.3d 221, 224 (Tex. App.—San Antonio 2000, no pet.).

Unlike a motion for summary judgment, which relies on evidence or the absence of evidence, *see* TEX. R. CIV. P. 166a, a special exception "cannot inject factual allegations that do not appear in the pleading." *Neff*, 527 S.W.3d at 530; *accord Fernandez v. City of El Paso*, 876 S.W.2d 370, 373 (Tex. App.—El Paso 1993, writ denied) (special exception "must confine itself to addressing solely the

14

matters shown on the face of the opposing pleading and must not inject factual allegations not appearing in the pleading against which the exception was raised"); *Harold v. Houston Yacht Club*, 380 S.W.2d 184, 186 (Tex. App.—Houston 1964, no writ) (special exception may not rely on extrinsic facts). Because "affirmative defenses are matters of avoidance that must be proven at the trial of the case," ordinarily they are "not properly raised as special exceptions." *Neff*, 527 S.W.3d at 530. *But see Easton v. Phelan*, No. 01-10-01067-CV, 2012 WL 1650024, at *7–8 (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) (mem. op.) (affirming dismissal on special exceptions based on attorney immunity, which was shown by allegations in challenged pleading).

"Generally, when the trial court sustains special exceptions, it must give the pleader an opportunity to amend the pleading, unless the pleading defect is of a type that amendment cannot cure." *Sonnichsen*, 221 S.W.3d at 635. When an amendment cannot cure a pleading defect, the trial court may render judgment dismissing the case. *See id.*; *Alpert*, 178 S.W.3d at 408.

### 3.    Appellate review of special exception ruling

Ordinarily, we review a trial court's grant of special exceptions for an abuse of discretion. *See Owen*, 2011 WL 3211081, at *6. A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 619–20 (Tex. 2007) (citing *Downer v. Aquamarine*

15

*Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). When reviewing the trial court's decision on special exceptions, we accept as true all the material factual allegations and statements reasonably inferred from the allegations set forth in the pleadings. *Id.* at 620. "We review a trial court's dismissal of a case upon special exceptions for failure to state a cause of action as an issue of law, using a de novo standard of review." *Alpert*, 178 S.W.3d at 405. "When reviewing a trial court's dismissal of a cause of action following the sustaining of special exceptions, we review the propriety of both the trial court's decision to sustain the special exceptions and the trial court's order of dismissal." *Owen*, 2011 WL 3211081, at *5.

**B.    Claims against Williams**

Williams pleaded the following special exceptions: (1) res judicata, collateral estoppel, and waiver as to all causes of action; (2) failure to state a claim as to the statutory cause of action for filing a fraudulent lien and the claim for sanctions; and (3) an unspecified privilege as to the statutory cause of action for filing a fraudulent lien and the claim for sanctions. The trial court sustained all of the special exceptions and dismissed the claims against Williams. This was error.

The trial court abused its discretion by sustaining the special exceptions based on res judicata, collateral estoppel, and waiver, which were based on an argument that a previous ruling on the turnover order had already determined the

16

same issues that arose in this case. Special exceptions cannot properly rely on evidence extrinsic to the pleadings. *See Neff*, 527 S.W.3d at 530. To determine whether the claims were barred by res judicata or collateral estoppel due to the prior proceeding would require evidence, such as the judgment and pleadings, from the earlier case. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (stating elements that party asserting res judicata must prove); *Jones v. City of Houston*, 907 S.W.2d 871, 874 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (burden is on party asserting collateral estoppel to produce evidence such as the pleadings and judgment from prior proceeding). The first amended petition did not allege any facts about the prior challenge to the turnover order on which the appellees based their special exceptions, and none of the necessary documents were made a part of the pleadings by attachment, filing and referencing in the pleadings, or copying into the body of the pleading. *See* TEX. R. CIV. P. 59 ("Exhibits and Pleading"). We conclude that the court could not have properly sustained the special exceptions based on res judicata, collateral estoppel, or waiver. *See Simulis, L.L.C. v. Gen. Elec. Capital Corp.*, 392 S.W.3d 729, 735 n.7 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("We express no opinion on the merit of GE's assertions, but we agree with Simulis that res judicata, collateral estoppel, and law of the case should not be asserted in special exceptions. . . . When a party seeks to dispose of claims barred by res judicata, collateral estoppel

17

law of the case, and similar theories, it should file a motion for summary judgment.").

Williams also specially excepted to the fraudulent lien and sanctions claims, because the appellants "fail[ed] to state a claim on which relief can be granted," and they did "not state a claim within Civil Practice and Remedies Code Chapter 12." These special exceptions do not comport with Rule 91's requirement to "point out intelligibly and *with particularity* the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations." TEX. R. CIV. P. 91 (emphasis added). A statement that the plaintiffs failed to state a claim is not a proper special exception—it is a prohibited general demurrer. *See Owen*, 2011 WL 3211081, at *6. Thus, the trial court could not have properly sustained these special exceptions.

Finally, Williams specially excepted that the acts and statements upon which the appellants' claims are based "are privileged communications, exempt from liability and cannot serve as the basis for the award of damages and attorney's fees." The special exceptions do not identify any specific privilege that applies to Williams in regard to the actions and communications that have been challenged. The only explanation of what type of privilege might apply is limited to special exceptions made by Ross and Sinkin individually. Without some indication of the nature of the privilege asserted by Williams, we cannot determine whether the contention is raised in the plaintiffs' pleadings. That is, Williams failed to "point

18

out intelligibly and with particularity" what part of the first amended petition, if taken as true, conclusively showed that her actions and communications were privileged. TEX. R. CIV. P. 91. The trial court thus could not have properly sustained this special exception.

We conclude that the trial court erred by sustaining the special exceptions and dismissing the claims against Williams. We sustain the first issue in part.

## C.     Claims against Ross and Sinkin

Ross and Sinkin pleaded the following special exceptions: (1) attorney immunity and judicial proceeding privilege as to all causes of action; (2) failure to state a claim as to the statutory cause of action for filing a fraudulent lien and the claim for sanctions. They also argued that it would be improper to require them to comply with discovery requests once the claims against them were dismissed and that they were entitled to attorney's fees.

Ross and Sinkin argue that they are immune from all of the causes of action alleged by Rose Turner and Moore because the actions that form the basis of the pleadings were undertaken in furtherance of their representation of Williams. Rose Turner and Moore argue that attorney immunity is an affirmative defense and that it is not absolute, as in cases involving fraud or illegal behavior. *See Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 382 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

19

Attorneys are "immune from civil liability to non-clients for actions taken in connection with representing a client in litigation." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015); *see Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018); *Alpert*, 178 S.W.3d at 405. Whether an attorney is immune in a given circumstance depends on the nature of the challenged conduct. *Youngkin*, 546 S.W.3d at 681; *Cantey Hanger*, 467 S.W.3d at 482. Attorney immunity applies when the challenged conduct is the "kind of conduct in which an attorney engages when discharging his duties to his client." *Cantey Hanger*, 467 S.W.3d at 482 (quoting *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01–06–00696–CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] March 20, 2008, pet. denied) (mem. op. on reh'g). "[A]n attorney cannot be held liable to a third party for conduct that requires the office, professional training, skill, and authority of an attorney." *Dixon*, 2008 WL 746548, at *7.

Because immunity focuses on the type of conduct, it may apply even to unsound or unmeritorious conduct. *See Easton*, 2012 WL 1650024, at *8. "[A]n attorney's conduct, even if frivolous or without merit, is not independently actionable if the conduct is part of the discharge of the lawyer's duties in representing his or her client." *Alpert*, 178 S.W.3d at 406. "The filing of pleadings and motions—even if they are unmeritorious or frivolous—and the rendition of legal advice cannot form the factual basis of a fraud claim against an attorney

when the acts are performed within the context of discharging duties to a client." *Easton*, 2012 WL 1650024, at *8.

Although attorney immunity is broad, it is not absolute. *See id.* Attorney immunity will not shield "independently fraudulent activities," *Alpert*, 178 S.W.3d at 406, such as "knowingly assisting a client in evading a judgment through a fraudulent transfer." *Essex Crane*, 371 S.W.3d at 382. In a case involving fraud, the plaintiff must prove that the attorney "agreed to the injury to be accomplished, not merely the conduct ultimately resulting in injury." *Id.* (citing *Chu v. Hong*, 249 S.W.3d 441, 446–47 (Tex. 2008)). Other situations in which attorney immunity may not apply include fraudulent concealment (when the attorney has a duty to speak), negligent misrepresentation, and when the law specifically provides for punishment of an attorney. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999) (negligent misrepresentation); *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (sanctions); *Hennigan v. Harris Cty.*, 593 S.W.2d 380, 384–85 (Tex. App.—Waco 1979, writ ref'd n.r.e.) (fraudulent concealment when there is a duty to speak).

Like res judicata and collateral estoppel, attorney immunity is an affirmative defense that must be proved by the defendants. However, unlike the assertions of res judicata and collateral estoppel in this case, which could not be conclusively

demonstrated by special exceptions because they required evidence extrinsic to the appellants' pleadings, the allegations in the first amended petition establish attorney immunity.

In the first amended petition, the appellants alleged that the underlying case stemmed from an order on arrears entered by the trial court in favor of Williams. They further alleged: "Respondents Steven A. Sinkin and Andrew Ross are attorneys representing Respondent Linda Williams." They asserted that the trial court signed an order for turnover relief, which provided that Williams "may issue child support liens and levies in the name of Rose Turner." Appellants' claims in the underlying suit alleged that Williams, through her attorneys, issued child-support liens and levies identifying Rose Turner as an obligor. They allege that the appellees misrepresented that Rose Turner was an obligor, and therefore the notices of liens and levies were "fraudulent."

As to Ross and Sinkin, the plaintiffs' pleading, taken as true, demonstrates that they were acting as attorneys for Williams when issuing or filing notices of lien or levy in an attempt to collect the child-support arrearages based on the trial court's orders. There are no allegations of independently fraudulent activities; no claim that Ross and Sinkin's actions with regard to the filing of the liens and levies were in any way distinct from their representation of Williams. Because collecting a judgment is the kind of conduct an attorney engages in when discharging his

duties to his client, they are immune from suit and liability for most of the claims against them. *See Cantey Hanger*, 467 S.W.3d at 482. Even if Rose Turner and Moore were to prove the factual allegations in their first amended petition, they still would lose due to attorney immunity. *See id.*

This conclusion does not apply with equal force to the motion for sanctions. Although the sanctions motion itself relies on the allegedly fraudulent filing of liens and levies, it is distinguishable from the other causes of action because sanctions specifically provide for the punishment of attorneys. *See Bradt*, 892 S.W.2d at 72. Attorney immunity is not, per se, a meritorious reason for dismissal of the sanctions motion. *See id.* Because sanctions are meant to punish lawyers, it may be possible for Rose Turner and Moore to plead some factual basis for the imposition of sanctions that is cognizable in law. The trial court erred by dismissing the sanctions claim due to attorney immunity without first giving Rose Turner and Moore an opportunity to replead. *See Sonnichsen*, 221 S.W.3d at 635.

Ross and Sinkin also specially excepted to the motion for sanctions on several other grounds, but none are sufficient to support the trial court's dismissal of the motion for sanctions. The motion for sanctions appears in paragraph 27 of the first amended petition, and it states:

## MOTION FOR SANCTIONS

27.    As set forth above, Respondent and her attorney knowingly misrepresented, under oath, that Petitioner Rose Turner is an

> obligor within the Notices or Lien and the Notices of Levy and the Notice of Lien filed with the Harris County Clerk's Real Property Records. Pursuant to TEX. R. CIV. P. 13, and Chapters 9 and 10 of the Civil Practice and Remedies Code, Petitioners request the Court award Petitioners their reasonable and necessary attorney's fees in filing and presenting this petition, financial institution fees, **and all damages incurred by Petitioners as a result of said groundless notices disseminated by Respondents.**

(Emphasis added.)

The special exceptions refer to Williams, Ross, and Sinkin collectively as "Respondents." As to the motion for sanctions, paragraph 27, the special exceptions state:

> 5.      Respondents specially except to paragraph 27 of Petitioners' First Amended Petition in its entirety because Petitioners fail to state a claim on which relief can be granted. Paragraph 27 and the causes of action should be stricken as a matter of law.

> 6.      Respondents specially except to paragraph 27 of Petitioners' First Amended Petition in its entirety because the acts, statements, representations and/or documents of which Petitioners complain, including but not limited to the issuance of child support liens and levies, are **privileged communications, exempt from liability and cannot serve as the basis for the award of damages and attorney's fees**. Paragraph 27 and the causes of action should be stricken as a matter of law.

> 7.      Respondents Andrew Ross and Steven A. Sinkin, individually, specially except to paragraph 27 of Petitioners' First Amended Petition because **they are not liable in the capacity in which they were sued.** All acts complained of by Petitioners **occurred exclusively within the course and scope of** Andrew Ross and Steven A. Sinkin's **employment** with Sinkin & Barretto, P.L.L.C., and **occurred during the course of this judicial proceeding.** Additionally, Steven A. Sinkin did not personally sign the child support liens or levies made the

subject matter of this lawsuit and did not instruct Andrew Ross to sign the child support liens or levies made the subject matter of this lawsuit. Paragraph 27 and the causes of action against Andrew Ross and Steven A. Sinkin, individually, should be stricken as a matter of law.

. . . .

10.    Respondents specially except to paragraphs . . . 27 . . . because . . . the claims alleged as a matter of law are barred by res judicata, collateral estoppel and waiver.

(Emphasis added.)

The assertion that the appellants' pleading failed to state a cause of action on which relief could be based is impermissibly vague. *See* TEX. R. CIV. P. 91; *see Owen*, 2011 WL 3211081, at \*6. The special exceptions asserting res judicata, collateral estoppel, and waiver fail for the same reasons that they failed as to the claims against Williams. *See Neff*, 527 S.W.3d at 530; *Simulis*, 392 S.W.3d at 735 n.7.

Ross and Sinkin also assert that they raised the judicial proceedings privilege in their special exceptions. The judicial proceedings privilege refers to the common-law principle that "[c]ommunications made during the course of judicial proceedings are privileged." *Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex. 1994); *see James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982) ("Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are

25

made."). The judicial proceedings privilege is based on a policy recognizing that the "administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation." *See James*, 637 S.W.2d at 917. "This privilege extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *Id.* at 916–17; *accord Helfand v. Coane*, 12 S.W.3d 152, 157 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

"When the communication at issue is made by an attorney, the judicial-proceedings privilege is referred to as attorney immunity." *Landry's, Inc. & Houston Aquarium, Inc. v. Animal Legal Def. Fund*, No. 14-17-00207-CV, 2018 WL 5075116, at *9 (Tex. App.—Houston [14th Dist.] Oct. 18, 2018, no pet. h.) (citing *Youngkin*, 546 S.W.3d at 679 n.2 (explaining, in a case in which an attorney claimed non-liability for acts taken in the course of representing a claim, that the judicial proceedings privilege, called "litigation privilege," and "attorney immunity" describe the same doctrine)). We have already explained why the trial court's dismissal of Rose Turner and Moore's sanctions claim was not supported by the special exception based on attorney immunity. Thus, we conclude that the judicial proceedings privilege does not support the trial court's dismissal of the sanctions claim either.

We sustain issues one through four in part. We hold that the trial court erred by sustaining the special exceptions and dismissing the claims against Williams because the special exceptions did not identify with particularity the claimed deficiency in the pleadings and did not show as a matter of law that claims against her could not proceed. We further hold that the court erred by dismissing the claim for sanctions against Ross and Sinkin without giving Rose Turner and Moore an opportunity to replead.

## IV.   Protective order

In their fifth issue, Rose Turner and Moore challenge the trial court's order protecting Ross and Sinkin from discovery. Ross and Sinkin requested a protective order based on their contentions that no claim or cause of action existed against them or Williams. They did not challenge any particular discovery request; rather they asserted that "no discovery of any kind is proper against them." No evidence was attached to the motion for a protective order. The only evidence relevant to discovery that was introduced during an oral hearing was a letter from Rose Turner and Moore's lawyer. The letter informed Ross and Sinkin that he believed their objections to a request for production and interrogatories were meritless. Rose Turner and Moore's lawyer asked them to provide responses.

In the final judgment, the trial court granted a protective order stating that "all discovery against ANDREW ROSS and STEVEN A. SINKIN is quashed and dismissed with prejudice as such discovery was unreasonably frivolous, oppressive, and harassing." On appeal, Ross and Sinkin assert that the trial court properly granted the protective order. They defend the trial court's action on the basis that the court dismissed all of Rose Turner and Moore's claims against them. Rose Turner and Moore argue that the court abused its discretion by granting the protective order because it was untimely and did not relate to a pending discovery request.

"A person from whom discovery is sought, and any other person affected by the discovery request, may move within the time permitted for response to the discovery request for an order protecting that person from the discovery sought." TEX. R. CIV. P. 192.6. A trial judge has discretion to grant a protective order to control the nature and form of discovery. *In re Collins*, 286 S.W.3d 911, 919 (Tex. 2009). But that discretion "is not without bounds." *Id.*; *see also In re Bennett*, 502 S.W.3d 373, 377 (Tex. App.—Houston [14th Dist.] 2016, no pet.). A party seeking a protective order must show particular, specific, and demonstrable injury by facts sufficient to justify a protective order. *Collins*, 286 S.W.3d 918; *Bennett*, 502 S.W.3d at 377. A trial court abuses its discretion by limiting discovery in the absence of some evidence supporting the request for a protective order. *Bennett*,

502 S.W.3d at 377 (citing *In re Alford Chevrolet–Geo*, 997 S.W.2d 173, 181 (Tex. 1999)); *see Masinga v. Whittington*, 792 S.W.2d 940, 941 (Tex. 1990) ("Conclusory statements within a motion do not suffice.").

In this case, there was no evidence showing that a pending discovery request would cause Ross and Sinkin a "particular, specific, and demonstrable injury." Therefore, the trial court abused its discretion by granting the protective order. We sustain the fifth issue.

## V.    Attorney's fees

In their sixth issue, Rose Turner and Moore challenge the trial court's award of attorney's fees. They argue that Williams, Ross, and Sinkin were not entitled to attorney's fees because there was no legal basis for the award and because the fees awarded were not reasonable.

The trial court awarded the appellees trial and conditional appellate attorney's fees. Although the trial court did not indicate the legal basis for the award of attorney's fees, the parties agree that the award was based on the protective order. At the hearing on the special exceptions and motion to strike, the trial court stated:

> The Motion for a Protective Order from the discovery is granted. I'm awarding Respondent reasonable and necessary attorney's fees in connection specifically with the Motion for a Protective Order in the amount of $5,000.00, which is enforceable by any means for enforcement of a judgment for a debt. I'm also awarding Respondent conditional appellate attorney's fees . . . .

29

In general, litigants are responsible for their own attorney's fees unless an award is authorized by statute or contract. *See Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 41 (Tex. 2012); *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009). Because a trial court's judgment must conform to the pleadings, a party seeking attorney's fees must plead for them, specifying the legal standard under which they are sought. *See Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 659 (Tex. 2009) (holding that party waived its right to recover attorney's fees under a contractual provision by pleading for attorney's fees only under a statutory provision); *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 61–62 (Tex. App.— Houston [1st Dist.] 2013, pet. denied) (holding that party could not recover attorney's fees under contractual provision when it pleaded for attorney's fees only under statutory provision).

The appellees argue that the fee award is proper under Rules of Civil Procedure 192.6 and 215.2. Rule of Civil Procedure 192.6 authorizes the trial court to "make any order in the interest of justice" to protect the party moving for a protective order "from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights." TEX. R. CIV. P. 192. 6. Rule 215.2 authorizes a trial court to award attorney's fees as a discovery

sanction based on a party's failure "to comply with proper discovery requests or to obey an order to provide or permit discovery." TEX. R. CIV. P. 215.2.

The appellees did not seek attorney's fees under Rules 192.6 or 215.2 in their first amended answer, the motion for a protective order, or the motion for attorney's fees. Moreover, we have held that the trial court abused its discretion by granting a protective order absent a showing that a pending discovery request would cause a "particular, specific, and demonstrable injury," and there is no evidence in this record that Rose Turner and Moore failed to comply with proper discovery requests or to obey an order to provide or permit discovery. Neither Rule 192.6 nor 215.2 support the trial court's award of attorney's fees. Thus, we conclude that the trial court abused its discretion by awarding attorney's fees. We sustain this issue.

## Conclusion

We conclude that the trial court improperly granted the special exceptions and dismissed the claims against Williams because the special exceptions did not identify with particularity the deficiency in the pleadings and did not show as a matter of law that claims against her could not proceed. We also conclude that the court erred by dismissing the claim for sanctions against Ross and Sinkin without giving Rose Turner and Moore an opportunity to replead. We reverse the judgment of dismissal as to those claims, and we affirm the judgment of dismissal as to the

remaining claims against Ross and Sinkin, which are barred by attorney immunity as a matter of law. We also reverse the grant of the protective order and award of attorney's fees.

Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.