**IN RE MASTER FLO VALVE INC. and Master Flo Valve (USA), Inc., Relators**

**NO. 14–15–00956–CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed January 26, 2016.

---

7. *See* TEX. FAM.CODE ANN. § 161.001(b)(1)(E).

8. *See* TEX. FAM.CODE ANN. § 161.001(b)(1)(N).

Maria Vega, Dallas, TX, Aaron Michael Streett, Houston, TX, for Relators.

John Denis Sheppard, Houston, TX, Real Party In Interest.

Panel consists of Justices Jamison, McCally, and Wise.

## OPINION

Ken Wise, Justice

On November 17, 2015, relators Master Flo Valve Inc. and Master Flo Valve (USA), Inc. ("Master Flo") filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex.R.App. P. 52. In the petition, Master Flo asks this court to compel the Honorable Larry Weiman, presiding judge of the 80th District Court of Harris County, to vacate a discovery order he signed on November 6, 2015.

As discussed below, we grant the petition for writ of mandamus in part and deny in part.

## Background

Master Flo is a manufacturer of oilfield products that engages distributors to market its products to end users. On December 1, 2006, Master Flo engaged Alpha to be its exclusive distributor for certain regions of the Mexican market as defined by Petróleos Mexicanos ("PEMEX"), Mexico's national oil company.

During Alpha's preparations to submit a major bid to supply choke valves for PEMEX's Samaria field, on May 25, 2012, Alpha's general manager, Francisco Hernandez ("Hernandez") resigned, as did several other Alpha personnel. These former Alpha employees started their own distribution company, Valvetecnia, S.A. de C.V. ("Valvetecnia").

On June 27, 2012, Master Flo modified its distributor relationship with Alpha from exclusive to nonexclusive.

Master Flo then agreed to supply chokes required for the Samaria bid to Valvetecnia instead of Alpha. Valvetecnia brought in a third party, Commercializadora Industrial y de Servicios Mallark, S.A. de C.V. ("Mallark"), to assist in bidding the project. On August 7, 2012, Mallark won the Samaria bid, under which it contracted to supply Master Flo chokes to PEMEX.

On March 15, 2013, Master Flo terminated its agreement and relationship with Alpha. On April 1, 2013, Master Flo entered into an exclusive distributor relationship with Valvetecnia.

On January 7, 2014, Alpha filed suit against Master Flo, alleging that Master Flo breached the distribution contract by supporting Valvetecnia on the Samaria bid. Alpha's petition alleges that Master Flo conspired with Hernandez, Valvetecnia, and Mallark to defeat Alpha's bid for the Samaria contract so that Master Flo could win the bid with its new distributor, Valvetecnia. Alpha's petition alleges that, as part of a conspiracy, Master Flo (1) secretly supported Hernandez in starting a competing business, (2) actively sabotaged Alpha's efforts to win the $3–plus million Samaria bid, and (3) wrongfully changed its contract with Alpha to "nonexclusive." Alpha also alleges Mallark, Valvetecnia, and Hernandez have generated millions of dollars by improperly usurping and trading on the foundation and relationships established by Alpha and by using confidential information stolen from Alpha. Alpha claims Master Flo's misconduct cost it the loss of the Samaria project and other future projects.

The cause was originally set for trial on September 21, 2015, but was not reached. On September 25, 2015, Alpha filed a Motion to Compel Collection & Production of Documents, in which it requested the trial court to overrule Master Flo's objections to over thirty requests for production and to order Master Flo to perform keyword searches of all email and electronic file systems.

On November 6, 2015, the trial court heard and granted the motion. The order states:

The Court has considered Plaintiffs' Motion to Compel filed September 25, 2015 (the "Motion") and is of the opinion it should be GRANTED. The Defendants' objections to the specific discovery requests cited in the Motion are OVERRULED. Defendants shall fully respond those requests. Within two weeks of this order, Defendants shall also perform an electronic keyword search across all email systems and electronic files for responsive documents, and shall produce all responsive documents. The keywords will be agreed by the parties, or will be supplied by the Court separately if an agreement was not reached at the hearing on the Motion. Without limiting the foregoing, Defendants shall produce all communications with Francisco Hernandez or any of his associated entities, and any of those entities' agents or representatives. Without limiting the foregoing, Defendants shall produce all phone records reflecting calls and texts between (a) Pablo Chiaraviglio and (b) Francisco Hernandez or any of his associated entities or any of those entities' agents or representatives.

The parties did not agree on the keywords to be used in the searches, so, per the discovery order, the keywords are to be supplied by the trial court.

### Mandamus Standard

While the scope of discovery is generally within the trial court's discretion, the trial court must impose reasonable discovery limits. *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (per curiam). An order that compels discovery well outside the bounds of proper discovery is an abuse of discretion for which mandamus is the proper remedy. *Id.*

The scope of discovery largely rests within the discretion of the trial court. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985) (orig.proceeding). For that reason, in considering whether a trial court has clearly abused its discretion with regard to a discovery order, the reviewing court may not substitute its judgment for the judgment of the trial court. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). "Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id.* at 840.

However, discovery requests must be reasonably tailored to include only matters relevant to the case. *See In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex.2003) (orig.proceeding) (per curiam); *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig.proceeding) (per curiam). Discovery may not be used as a fishing expedition. *Id.* at 713. Discovery requests must be limited to the relevant time, place and subject matter. *See In re Xeller*, 6 S.W.3d 618, 626 (Tex.App.—Houston [14th Dist.] 1999, orig. proceeding); *In re CNA Holdings, Inc.*, 01-03-01271-CV, 2004 WL 1944967, at *5 (Tex.App.—Houston [1st Dist.] Sept. 2, 2004, orig. proceeding) (holding that the discovery requests at issue are overbroad as written because they are not appropriately limited in time and subject matter).

The various categories of Alpha's requests for production and whether Master Flo's objections thereto were incorrectly overruled are discussed below.

### Alpha's Requests for Communications

The discovery order overrules Master Flo's objections to and requires it to fully respond to the following requests pertaining to communications:

*REQUEST FOR PRODUCTION NO. 14:*

All communications between Francisco Hernandez and Pablo Chiaraviglio.

*REQUEST FOR PRODUCTION NO. 19:*

All communications with Valvetecnia.

*REQUEST FOR PRODUCTION NO. 36:*

Please produce all communications between (a) Pablo Chiaraviglio or Carlos Arrelanos or Mark McNeil or Frank Koeck on the one hand and (b) Francisco Hernandez on the other hand since March 2012.

*REQUEST FOR PRODUCTION NO. 37:*

Please produce all communications between (a) Master Flo on the one hand and (b) Valvetecnia or Mallark on the other hand since March 2012.

Master Flo objected to each of these requests as overly broad, unduly burdensome, and as seeking information that is not reasonably calculated to lead to the discovery of admissible evidence, and responded, subject to these objections, "Defendants will produce all non-privileged responsive documents regarding the provision of services or involvement by Francisco Hernandez related to the PEMEX bid on any entity's behalf other than Alpha Solutions S.A. de C. V."

■ Master Flo argues that requests nos. 14 and 19 are overbroad because they have no time limit. "Discovery orders requiring production from an unreasonably long period ... are impermissibly overbroad." *In re CSX Corp.,* 124 S.W.3d at 152 (citing *In re Am. Optical Corp.,* 988 S.W.2d at 713). For example, in *K Mart Corp. v. Sanderson,* the supreme court held overbroad a request for every criminal act that occurred on the defendant's premises for the last seven years. 937 S.W.2d 429, 431 (Tex.1996) (per curiam). Similarly, in *Dillard Department Stores, Inc. v. Hall,* the supreme court held overbroad a request for every false imprisonment case in the last five years throughout twenty states. 909 S.W.2d 491, 491–92 (Tex.1995) (per curiam).

Alpha does not offer any justification for ordering Master Flo to produce communications occurring before 2012, other than that Alpha's relationship with Master Flo began in late 2006. But Hernandez did not resign from Alpha until May 25, 2012, which marked the start of the alleged conspiracy. The trial court's order to produce all communications with Hernandez, without any time limit, will likely require Master Flo to produce many irrelevant communications going all the way back to 2006. This constitutes an improper fishing expedition and is contrary to supreme court authority that discovery requests must have a reasonable time limit. We conclude that request no. 14 is overbroad because it has no time limit.

■ It is not this court's responsibility to remedy this defect. "The burden to propound discovery complying with the rules of discovery should be on the party propounding the discovery, and not on the courts to redraft overly broad discovery so that, as re-drawn by the court, the requests comply with the discovery rules." *In re TIG Ins. Co.,* 172 S.W.3d 160, 168 (Tex.App.—Beaumont 2005, orig. proceeding). We therefore direct the trial court to vacate the part of its order that requires Master Flo to fully respond to request no. 14.

■ However, request no. 19 for all communications with Valvetecnia is not overbroad due to the absence of a time limit. Valvetecnia did not exist until 2012, and thus, this request could only apply to

communications occurring since 2012, which is a relevant time limit.

 Master Flo additionally argues request nos. 19, 36, and 37 are overbroad because they have no subject matter limit. Master Flo urges that an appropriate subject matter limit would be the Samaria project or the PEMEX bid, and Master Flo has produced documents within that limit. However, a review of Alpha's live pleading and the far ranging allegations reveals that Alpha's complaints of conspiracy and tortious interference, in particular, are broader than the proposed subject matter. Moreover, Alpha's complaints include allegations that the defendants engaged in ongoing efforts to "tarnish the Plaintiffs in the eyes of PEMEX" and a general campaign to negatively impact Alpha's reputation and good will. In view of the broad conspiracy between Master Flo, Chiaraviglio, Hernandez, Valvetecnia, and Mallark and the damages that Alpha's petition alleges, we conclude that, with the appropriate time limits already discussed, Master Flo has not demonstrated that the trial court abused its discretion in overruling Master Flo's objections to these requests.

### Alpha's Requests for Phone Records

 The discovery order overrules Master Flo's objections to and requires it to fully respond to the following requests regarding phone records:

*REQUEST FOR PRODUCTION NO. 23:*

Please produce Pablo Chiaraviglio's personal phone records reflecting any calls or texts to Mexico during 2012.

*REQUEST FOR PRODUCTION NO. 24:*

Please produce Pablo Chiaraviglio's personal phone records reflecting any calls or texts to Francisco Hernandez from 2006–present.

*REQUEST FOR PRODUCTION NO. 25:*

Please produce Pablo Chiaraviglio's personal phone records reflecting any calls or texts to anyone associated with Valvetecnia from 2006–present.

*REQUEST FOR PRODUCTION NO. 26:*

Please produce Pablo Chiaraviglio's personal phone records reflecting any calls or texts to anyone associated with Mallark from 2006–present.

*REQUEST FOR PRODUCTION NO. 27:*

Please produce Pablo Chiaraviglio's work phone records reflecting any calls or texts to Mexico during 2012.

*REQUEST FOR PRODUCTION NO. 28:*

Please produce Pablo Chiaraviglio's work phone records reflecting any calls or texts to Francisco Hernandez from 2006–present.

*REQUEST FOR PRODUCTION NO. 29:*

Please produce Pablo Chiaraviglio's work phone records reflecting any calls or texts to anyone associated with Valvetecnia from 2006–present.

*REQUEST FOR PRODUCTION NO. 30:*

Please produce Pablo Chiaraviglio's work phone records reflecting any calls or texts to anyone associated with Mallark from 2006–present.

Master Flo objected to each of these requests, stating:

Defendants object to this request on the grounds that it is overly broad, unduly burdensome, and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request as overly broad and unduly

burdensome to the extent it seeks imaging and recovery of non-active data from mobile phones on the grounds that such information is not reasonably available in the ordinary course of business.

Master Flo also responded that no text messages exist. Thus, only records showing when and to which phone numbers calls were made or received are at issue.

We agree with Master Flo that request nos. 24, 25, 26, 28, 29, and 30 are overbroad because they request records of phone calls made before 2012 going all the way back to 2006. Alpha offers no argument as to why all records of all phone calls occurring between 2006 and 2012—when the conspiracy is alleged to have begun—constitutes a relevant scope. Unlike requests nos. 36 and 37 discussed above, these requests sweep broader than those alleged to have participated or cooperated in a conspiracy. "Anyone associated with" is language that we conclude renders these particular requests overbroad.

■■■ We also find that requests nos. 23 and 27, which request all of Chiaraviglio's personal and work phone records reflecting *any calls to Mexico*, are overbroad because they have no subject matter limit. Not even the distributorship at issue or the territory alleged to have been usurped covers all of Mexico.

We therefore direct the trial court to vacate the part of its order that requires Master Flo to fully respond to request nos. 23 through 30.

1. Master Flo's petition also argues that request for production no. 18 for documents regarding transfers between Master Flo and Mallark is overbroad. Master Flo, however, did not object to this request in its latest (Second Amended) response to the request for production and waived any such objection. *See Sumner v. Bd. of Adjustments of the City of*

## Alpha's Requests Regarding the Transfers of Money

■■■ The discovery order overrules Master Flo's objections to and requires it to fully respond to the following requests:

*REQUEST FOR PRODUCTION NO. 15:*

All documents and communications regarding all transfers of money or consideration of any kind between Master Flo (including but not limited to Pablo Chiaraviglio) and any entity affiliated with Francisco Hernandez.

*REQUEST FOR PRODUCTION NO. 21:*

Documents and communications regarding all transfers of money or consideration of any kind between Master Flo and Valvetecnia.

Master Flo objected to these requests on the grounds that they are overly broad, unduly burdensome, and seek irrelevant information that they are not reasonably calculated to lead to the discovery of admissible evidence, and responded that it will produce non-privileged responsive documents sufficient to show all transfers of money between these entities relating to the PEMEX bid.

■■■ Master Flo argues that these requests are overbroad because they have no time limit.[1] According to Master Flo, to comply with this request it would have to produce nearly ten years of invoices (since 2006) and other miscellaneous receipts with both Valvetecnia and Alpha because Hernandez was affiliated with Alpha before starting Valvetecnia. Alpha offers no

*Spring Valley Vill.*, 01–14–00888–CV, 2015 WL 6163066, at *6 (Tex. App—Houston [1st Dist] Oct. 20, 2015, pet. filed) (when pleading or other instrument is amended or substituted for an earlier instrument, the earlier instrument shall no longer be regarded as a part of the pleading in the record of the cause).

explanation as to why transfers of money or consideration to Alpha would be relevant. Moreover, Alpha presumably already has records of transfers of money that Master Flo has made to Alpha. Accordingly, we agree that request no. 15 is overbroad because it has no time limit. We therefore direct the trial court to vacate the part of its order that requires Master Flo to fully respond to request no. 15.

 However, request no. 21 regarding Valvetecnia transfers is not overbroad due to the absence of a time limit. Valvetecnia did not exist until 2012, and thus, this request could only apply to transfers occurring since 2012. Nor has Master Flo produced evidence that producing these documents would be unduly burdensome.[2]

## Alpha's Requests for Financial Records

 The discovery order overrules Master Flo's objections to and requires it to fully respond to the following requests:

*REQUEST FOR PRODUCTION NO. 34:*

Please produce the Master Flo budgets for 2011–present of the kind referenced on pages 141–142 of Pablo Chiaraviglio's deposition.

*REQUEST FOR PRODUCTION NO. 49:*

To the extent not already produced, produce the year-end financials for the Defendants for the last three years, including profit and loss statements, financial statements, balance sheets, asset and liability statements, and tax returns.

*REQUEST FOR PRODUCTION NO. 50:*

To the extent not already produced, produce the last updated monthly and year-to-date financials for the Defendants, including profit and loss statements, financial statements, balance sheets, asset and liability statements, and tax returns.

Master Flo objected to each of these request on the grounds that they are overly broad, unduly burdensome, and seek irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence.

Master Flo argues that these requests are overbroad and that the burden of producing the requested documents outweighs their likely benefit. We conclude that Master Flo has failed to demonstrate that the trial court acted beyond its discretion because these documents, to the extent that they contain information about Master Flo's business in Mexico with Valvetecnia, are within the scope of discovery on, in particular, Alpha's claims for lost profits. Nor has Master Flo shown or produced evidence that producing these documents would be unduly burdensome.

## Alpha's Requests for Organizational Charts

Master Flo argues that the trial court abused its discretion by ordering it to com-

---

**2.** A party resisting discovery cannot simply make conclusory allegations that the requested discovery is unduly burdensome. *In re Alford Chevrolet-Geo,* 997 S.W.2d 173, 181 (Tex.1999) (orig.proceeding). "The party must produce some evidence supporting its request for a protective order." *Id.* Any party who seeks to exclude matters from discovery on grounds that the requested information is unduly burdensome or costly has the affirmative duty to prove the work necessary to comply with discovery. *Independent Insulating* *Glass/Southwest, Inc. v. Street,* 722 S.W.2d 798, 802 (Tex.App.—Fort Worth 1987, writ dism'd). *See In re State Farm Lloyds,* 13–14–00616–CV, 2015 WL 6520998, at *7 (Tex. App.—Corpus Christi Oct. 28, 2015, orig. proceeding) (rejecting unduly burdensome claim because State Farm did not provide the trial court any evidence regarding the estimated cost or expense of producing the ESI data or of the time that it would take to produce the ESI data).

ply with request no. 31, which requests "all organization charts sufficient to reflect the corporate relationship between Master Flo Valve Inc. and Master Flo Valve USA, Inc." because it has already produced sufficient documents and the request for additional documents is overbroad and unduly burdensome. Other than its reference to the keyword search, which we address below, Master Flo offers no argument about why the face of the request is overbroad and no record citation to evidence proffered to show the request is unduly burdensome. We conclude, therefore, that Master Flo has not demonstrated the trial court abused its discretion by overruling the objections.

### Alpha's Requests for Settlement Agreements

 Master Flo argues that the trial court abused its discretion by ordering it to comply with request no. 43, which requests "[a]ll settlement agreements, ... contracts, agreements, understandings, and/or deals made concerning this lawsuit or its subject matter." Master Flo objected to the request "to the extent that" it is a duplicate of requests for disclosure and Master Flo asserts that it has already produced all documents responsive to this request in responding to the disclosures. Master Flo does not specifically address what portion of the request is not duplicative of requests for disclosure and why the request for those materials is objectionable. We therefore conclude that Master Flo has not demonstrated that the trial court abused its discretion in overruling Master Flo's objection.

### Alpha's Request for all Evidence Relating to Claims, Defenses, or Damages

 The trial court ordered Master Flo to fully respond to Alpha's request no. 70, which requests Master Flo to produce "all documents, communications, tangible or intangible evidence relating in any way to defendants' claims, defenses, or alleged damages." Master Flo objected that this request is overly broad and fails to identify with reasonable particularity the documents that are sought.

A request for all evidence that supports an opposing party's allegations, but which does not identify any particular class or type of documents, is an improper request to be allowed to generally peruse all evidence the opposing party might have; such a request is vague and overbroad. *Loftin v. Martin*, 776 S.W.2d 145, 148 (Tex.1989). In *Loftin*, the supreme court held that a request for all notes, records, memoranda, documents and communications that the carrier contends support its allegations, was vague and overbroad. *Id.* Alpha's request no. 70 is indistinguishable from the request that the supreme court held vague and overbroad in *Loftin*. Accordingly, the trial court abused its discretion by ordering compliance with that request. We direct the trial court to vacate this part of its order.

### Part of the Discovery Order Goes Beyond the Requests

 The trial court orders Defendants to fully respond to the requests discussed above and additionally orders Defendants to produce: (1) all communications with Francisco Hernandez or any of his associated entities, and any of those entities' agents or representatives, and (2) all phone records reflecting calls and texts between (a) Pablo Chiaraviglio and (b) Francisco Hernandez or any of his associated entities or any of those entities' agents or representatives. Master Flo correctly asserts that the additional part of the order is broader than the requests discussed above because it has no time

limits. A party cannot be compelled to produce that which has not been requested. *See In re Lowe's Companies, Inc.*, 134 S.W.3d 876, 880 (Tex.App.—Houston [14th Dist.] 2004, orig. proceeding); *see also In re Tanglewood Water . Co.*, No. 05–98–01376–CV, 1998 WL 765700, at *2 (Tex. App.—Dallas Oct. 30, 1998, orig. proceeding) (trial court abused its discretion in ordering production of tax returns that were not requested). To the extent that the additional part is broader and requires the production of documents that have not been requested, it is an abuse of discretion. We direct the trial court to vacate the additional part of the order because it is overbroad or is not the subject of a proper request.

### The Trial Court Abused its Discretion by Ordering Keyword Searches.

■ Master Flo argues that the trial court's order to perform searches across all its email systems and electronic files using keywords to be supplied by the court is extraordinary under Texas law and akin to requiring a party to turn over its electronic storage devices for examination, and that the requirements for such discovery established by the Texas Supreme Court in *Weekley Homes* should therefore apply here. *See In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex.2009) (orig.proceeding) (recognizing that providing access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged).

In *Weekley Homes*, the order that the supreme court found to be an abuse of discretion allowed HFG's forensic experts to conduct specific keyword searches of Weekley Homes's computer hard drives. *Id.* at 313. Here, the trial court ordered that the keyword searches be conducted by Master Flo, not Alpha's experts, and was therefore less intrusive than the order in *Weekley Homes*. However, we find *Weekley Homes* sufficiently analogous to provide some guidance here.[3]

In *Weekley Homes*, the Texas Supreme Court held that for a party or its expert to obtain access to an opposing party's electronic storage device, as a threshold matter, the requesting party must show that the responding party has defaulted in its obligation to search its records and produce the requested data. *Id.* at 317. The requesting party must show that the responding party's production has been inadequate. *Id.*; *see also In re Pinnacle Eng'g, Inc.*, 405 S.W.3d 835, 843–44 (Tex. App.—Houston [1st Dist.] 2013, orig. pro-

---

**3.** Alpha points to only one Texas decision in which a trial court ordered a party to perform electronic keyword searches. In *Chevron Phillips Chemical Co. LP v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 73 (Tex.App.—Houston [14th Dist.] 2011, pet denied), Kingwood Crossroads requested ELDI to produce all email communications of six named ELDI employees relating or referring to certain subjects and persons. Kingwood Crossroads received discovery from a third party that included emails that should have existed on ELDI's servers; this indicated that ELDI likely possessed other emails that it failed to search for and produce. *Id.* Because of this default, the trial court ordered ELDI to conduct a further search of its emails, under the

supervision of an independent third party expert, including all emails that may be stored on servers, back-up tapes, or otherwise. *Id.* Our court held that the trial court did not abuse its discretion by awarding attorney's fees as sanctions for ELDI's violation of this order. *Id.* at 74–75. The *Chevron Phillips* decision is not helpful here because our court only reviewed whether the sanctions order, not the initial discovery order, was an abuse of discretion. In any event, the decision does not support Alpha's position that no showing of a prior default is required because the trial court only ordered ELDI to perform keyword searches after it was shown that it had previously failed to search for emails.

ceeding) (holding that trial court abused its discretion in compelling relators to turn over their computer for examination without requiring the moving party to demonstrate that realtors had defaulted on their discovery obligations). A court may not rely on "mere skepticism or bare allegations that the responding party has failed to comply with its discovery duties." *In re Weekley Homes*, 295 S.W.3d at 317–18. *See In re Stern*, 321 S.W.3d 828, 845 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (holding that the trial court improperly relied on opposing counsel's bare allegations that Stern had failed to comply with his discovery duties).

We believe that these requirements should apply here. An order that a party conduct certain keyword searches of its electronic files intrudes on a party's right to develop its own means of searching for responsive documents without court involvement or interference by the opposing party. Absent evidence that a party has previously failed to adequately search for responsive documents, generally, a trial court should not be involved in managing how a party performs searches of its electronic data for responsive documents. Otherwise, litigants and courts would become embroiled in costly disputes about keywords or other search techniques. Such disputes are prone to waste judicial resources, and thus, should be reserved for when a prior default of a discovery obligation has been shown.

Our review of the record indicates that Alpha did not meet its threshold burden of showing that Master Flo defaulted on its obligation to search for and produce documents responsive to the requests for production that Alpha moved to compel. In fact, Master Flo searched for and produced some responsive documents, but limited its production to subject matters it considered relevant to Alpha's claims.

Master Flo took the position that only documents and communications relating to the PEMEX bid and the departure of Francisco Hernandez from Alpha were within the appropriate scope of discovery and objected to the requests at issue as overly broad and unduly burdensome.

A party may object to written discovery if a good faith legal and factual basis for the objection exists at the time the objection is made. Tex.R. Civ. P. 193.2(c); *In re Park Cities Bank*, 409 S.W.3d 859, 876 (Tex.App.—Tyler 2013, no pet.). Master Flo's objections have a legal basis because discovery requests "must be limited by time, place, and subject matter" and reasonably tailored to include only matters relevant to the case. *Xeller*, 6 S.W.3d at 626. Alpha has not demonstrated that Master Flo's objections were made in bad faith and had no factual basis. Master Flo's limited production and failure to produce responsive documents it objected to as outside of the scope of discovery or unduly burdensome was not a default of its discovery obligations because it had the right to withhold such documents until the trial court ruled on its objections.

Alpha argues that the trial court was justified in ordering the keyword searches because of earlier misconduct by Master Flo. For example, Alpha complains that Master Flo moved to dismiss the suit based on forum non conveniens and objected to providing any documents or depositions before the motion was ruled on, even though it possessed a letter that appears to contradict a statement in Master Flo's supporting affidavit. Alpha also asserts that Master Flo did not fully respond to other discovery requests that are not the subject of its motion to compel, including certain interrogatories that Master Flo had objected to. However, none of Master Flo's alleged misconduct indicates that it failed to adequately search for and pro-

duce documents responsive to the requests for production that Alpha moved to compel.

Significantly, Alpha, in its motion to compel, temporarily suspended its motion for sanctions. If Master Flo has, in fact, defaulted on other discovery obligations, then Alpha may move for sanctions and the trial court should craft a sanctions order specifically designed to obtain Master Flo's compliance where it has defaulted. Here, the trial court improperly ordered Master Flo to perform keyword searches to obtain compliance with certain requests for production even though the record does not show Master Flo failed to comply with these requests. Rather, the record shows that Master Flo partially produced some responsive documents and exercised its right to make objections to these requests.

 Alpha also argues that Master Flo's default of its obligation to produce documents is evidenced by the fact that on September 15, 2015, after Alpha filed a motion for sanctions and only six days before trial, Master Flo produced 250 new pages of correspondence and documents that Chiaraviglio had obtained from Hernandez. Master Flo, however, argues that its supplemental production shows compliance, not default. According to Master Flo, new emails between Hernandez and Chiaraviglio came to light shortly before Chiaraviglio's deposition on August 25, 2015, and Chiaraviglio testified to the existence of these emails at that deposition. Master Flo claims that the documents it produced on September 15, 2015 consist of twenty-five email communications between Chiaraviglio and Hernandez, the majority of which did not occur until August of 2015, with many occurring less than a week before the deposition. Master Flo states that it waited until September 15 to produce the emails because it needed ade-

quate time to translate them from Spanish and to review them for privilege. Alpha does not identify which, if any, of the emails existed before August of 2015 and therefore should have been produced earlier. The record does not show that these emails were provided to the court or that the court reviewed them to determine whether Master Flo had, in fact, unjustifiably delayed in producing them. A court may not rely on "mere skepticism or bare allegations that the responding party has failed to comply with its discovery duties." *In re Weekley Homes*, 295 S.W.3d at 317–18.

In sum, the record does not support a finding by the trial court that Master Flo defaulted on its obligation to search for and produce documents responsive to the requests for production that Alpha moved to compel. Master Flo had the right to make good faith objections to these requests and withhold documents until the trial court overruled its objections. Accordingly, we hold that the trial court abused its discretion in ordering Master Flo to perform searches across all its email systems and electronic files using keywords to be supplied by the court. We direct the trial court to vacate this part of its order.

## Conclusion

We conditionally grant relator's petition for writ of mandamus in part. We direct the trial court to vacate the part of its discovery order that states:

> Within two weeks of this order, Defendants shall also perform an electronic keyword search across all email systems and electronic files for responsive documents, and shall produce all responsive documents. The keywords will be agreed by the parties, or will be supplied by the Court separately if an agreement was not reached at the hearing on the Motion. Without limiting the

foregoing, Defendants shall produce all communications with Francisco Hernandez or any of his associated entities, and any of those entities' agents or representatives. Without limiting the foregoing, Defendants shall produce all phone records reflecting calls and texts between (a) Pablo Chiaraviglio and (b) Francisco Hernandez or any of his associated entities or any of those entities' agents or representatives.

We further direct the trial court to vacate the discovery order to the extent that it requires Master Flo to fully respond to requests for production nos. 14, 15, 23, 24, 25, 26, 27, 28, 29, 30, and 70.

We deny Master Flo's petition as to the other requests for production that are the subject of the motion to compel.

We are confident that respondent will act in accordance with this opinion. The writ will issue only if the trial court fails to do so.