# NO. 12-23-00138-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *THOMAS FULLER MASON,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

Relator, Thomas Fuller Mason, filed this original proceeding to challenge Respondent's denial of his motion for protection.[1] We conditionally grant the writ.

## BACKGROUND

Walter Fuller Mason died on August 19, 2002. Relator, Walter's son, served both as executor of Walter's estate and trustee of a testamentary trust created for the benefit of Walter's wife Elizabeth Mason. T.O. Mason was Walter's father. Real Parties in Interest Maja Mason Steele and Thomas Theron Mason (collectively RPIs) are Relator's two children. When Elizabeth died on May 31, 2006, the trust property was to be split into three trusts for the benefit of Relator and each RPI.

On August 6, 2020, RPIs sued Relator for breach of fiduciary duty, conversion, and partition of real estate and mineral interests. RPIs further requested an accounting. RPIs allege that Relator either never created their two trusts or never informed them of the trusts' creation. According to RPIs, upon Walter's death, Relator "began a course of conduct to deceive and cheat his children … of their rightful inheritance." RPIs assert various allegations against Relator, including that he (1) mischaracterized certain property as community property instead of separate property, (2) placed his interests above theirs, (3) made fraudulent representations and

---

[1] Respondent is the Honorable J. Clay Gossett, Judge of the 4th District Court in Rusk County, Texas.

conveyances, (4) paid RPIs less than what their respective interests entitled them to, (5) clouded the title to their interests in certain property, (6) fraudulently represented to oil companies that he was the sole owner of Walter's oil, gas, and other mineral interests and consequently received royalty payments, and (7) fraudulently concealed certain of Walter's property that Relator assumed and claimed as his sole property. RPIs request actual and punitive damages.

On December 2, Respondent signed an order stating:

> The Parties have further agreed and the Court hereby orders that Defendant Thomas Fuller Mason shall make a full accounting to the Court along with all documentation used to support that accounting for the influx and outflow of money into his hands whereby he shall account for all property both real, personal and mixed which he has ever had in his possession or under his control which he inherited from his father, Walter Fuller Mason, which accounting shall be completed and filed with this Court with copies delivered to Plaintiffs' attorneys on or before 5:00 p.m. on December 8, 2022.

In January 2023, RPIs filed a motion to show cause for failure to file an accounting as ordered. On March 23, 2023, the RPIs served Relator with a subpoena to appear before Respondent on April 3 to attend and give testimony. The subpoena commanded Relator to produce five categories of documents. Relator filed a motion for protection, which Respondent denied on May 10. Respondent ordered Relator to produce all documents requested no later than May 20.[2] Relator filed this original proceeding on May 19, and this Court granted Relator's request for a stay of Respondent's May 10 order.[3]

---

[2] In May 2022, Respondent granted the RPIs' motion to sever their claims for partition of real property. RPIs subsequently filed an amended petition in the severed cause that reasserted their causes of action, including partition of real estate, and added a claim for partition of personal property. The subpoena identifies the severed cause, trial court cause number 2020-160A. Respondent's order was signed in trial court cause number 2020-160, the original cause. The parties do not discuss this discrepancy, but Relator identifies the original cause number in his petition for writ of mandamus.

[3] RPIs filed a supplemental record with this Court, which contains a copy of Relator's deposition. However, the record does not indicate that the deposition was presented to Respondent or that Respondent considered the deposition when ruling on Relator's motion for protection. In fact, the deposition was not filed with the Rusk County District Clerk until June 2, 2023, long after Respondent's ruling. Relator filed a motion to strike the deposition. We **grant** the motion to strike and will not consider the deposition. *See In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding) (declining to consider portions of mandamus record not before trial court when its decision was made); *see also In re Landstar Ranger, Inc.*, 628 S.W.3d 626, 628 n.1 (Tex. App.—Texarkana 2021, orig. proceeding) (declining to consider supplemental mandamus record because information contained therein was not before trial court).

2

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *See **In re Daisy Mfg. Co.**, 17 S.W.3d 654, 658 (Tex. 2000) (orig. proceeding) (per curiam). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. ***Walker v. Packer***, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. ***Id***. at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. ***Id***. The relator has the burden to establish both prerequisites to mandamus. ***In re Fitzgerald***, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding).

A party will not have an adequate remedy by appeal: (1) when the appellate court would not be able to cure the trial court's discovery error; (2) where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; and (3) where the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it a part of the record. ***In re Ford Motor Co.***, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); ***Walker***, 827 S.W.2d at 843. Because parties are not entitled to unlimited discovery, the trial court must impose reasonable discovery limits. ***In re Hyundai Motor Co.***, No. 12-19-00417-CV, 2020 WL 1445303, at *6 (Tex. App.—Tyler Mar. 25, 2020, orig. proceeding) (mem. op.). A discovery order that compels overly broad discovery is an abuse of discretion. ***Dillard Dep't Stores, Inc. v. Hall***, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (per curiam).

## ABUSE OF DISCRETION

The RPIs' subpoena commanded that Relator produce five categories of documents:

> Any and all documents which relate in any way to the properties, real, personal and mixed, once owned by T.O. Mason, his father, Walter Fuller Mason and his mother, Elizabeth Ann Mason, including but not limited to all deeds, deeds of trusts [sic], and promissory notes that relate to the ownership by the above named persons;
>
> Any and all documents regarding accounts from any financial institution of any kind located in Rusk County, Texas in which Thomas Fuller Mason has an interest, including but not limited to savings accounts and investment accounts of any nature whatsoever;

Any and all documents relating to any and all oil, gas and other minerals in which he has an interest of any kind whatsoever, all division orders which he has received from any and all oil companies in which he has received oil royalties at any time in the past;

Any and all tax returns which he has filed since the death of Walter Fuller Mason for any entity i.e., Mason Estate, his personal, etc.; and

Evidence of all property taxes on real estate of any properties whatsoever kind which he has paid to any taxing authority in Rusk County, Texas or any county in the State of Texas for any entity i.e. Mason estate, his personal, etc.

Respondent ordered Relator to produce responsive documents, without limitation. Relator contends that he produced over 2,000 pages of documents and that Respondent's order compels production outside the bounds of proper discovery. Specifically, he maintains that the requests are not tailored to include only relevant matters, being overbroad as to time, scope, and subject matter.

**Applicable Law**

"A subpoena may not be used for discovery to an extent, in a manner, or at a time other than as provided by the rules governing discovery." TEX. R. CIV. P. 176.3(b). The party causing a subpoena's issuance "must take reasonable steps to avoid imposing undue burden or expense on the person served." TEX. R. CIV. P. 176.7. A person commanded to attend and give testimony, or to produce documents or things, at a hearing or trial, may object or move for protective order before the court at the time and place specified for compliance. TEX. R. CIV. P. 176.6(f).

It is not the burden of the responding party to tailor a reasonable discovery request for the requesting party. *In re Houstonian Campus, L.L.C.*, 312 S.W.3d 178, 181 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding). Rather, the requesting party has the responsibility to narrowly tailor its requests. *Id*. at 182. Specifically, a discovery request must show a reasonable expectation of obtaining information that will aid the dispute's resolution and must be reasonably tailored to include only matters relevant to the case. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, provided the discovery is "reasonably calculated to lead to the discovery of admissible evidence." *See* TEX. R. CIV. P. 192.3(a). Relevant evidence is that which has any tendency to make a fact more or less probable than it would be without the

4

evidence and the fact is of consequence in determining the action. TEX. R. EVID. 401. Although "relevant to the subject matter" is broadly construed, there are limits. *In re UPS Ground Freight, Inc.*, 646 S.W.3d 828, 832 (Tex. 2022) (per curiam) (orig. proceeding) (citing *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (per curiam)). The evidence need not be admissible; it is sufficient that the information appears reasonably calculated to lead to the discovery of admissible evidence. *See* TEX. R. CIV. P. 192.3(a) "Information is 'patently irrelevant' when reasonable minds would not differ that it has no tendency to prove or disprove any issue involved in the subject matter of the suit and the information's irrelevancy is apparent from the face of the record." *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). We evaluate relevancy on a case-by-case basis by considering, among other things, the claims as pleaded and the instrumentality of the alleged injury. *Id*.

A discovery request is overbroad when it encompasses time periods, activities, or subject matters that are not relevant to the case in which the discovery is sought. *See Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 226. Such requests are overly broad as a matter of law. *In re United Fire Lloyds*, 578 S.W.3d 572, 580 (Tex. App.—Tyler 2019, orig. proceeding); *In re Brookshire Grocery Co.*, No. 12-06-00065-CV, 2006 WL 2036569, at *2 (Tex. App.—Tyler July 21, 2006, orig. proceeding) (mem. op.). A party may not use discovery as a fishing expedition. *UPS Ground Freight*, 646 S.W.3d at 832. "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *CSX Corp.*, 124 S.W.3d at 153; *see UPS Ground Freight*, 646 S.W.3d at 832.

Discovery should be limited if the trial court determines that (a) it is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive; or (b) its burden or expense outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. TEX. R. CIV. P. 192.4. Additionally, to protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights, a trial court may make an order in the interest of justice that, among other things, orders that: (1) the requested discovery not be sought in whole or in part; (2) the extent or subject

5

matter of discovery be limited; (3) the discovery not be undertaken at the time or place specified; (4) the discovery be undertaken only by such method or upon such terms and conditions or at the time and place directed by the court; and (5) the results of discovery be sealed or otherwise protected, subject to the provisions of Rule 76a. TEX. R. CIV. P. 192.6(b); *see* TEX. R. CIV. P. 76a (sealing court records). Although a trial court may exercise some discretion in granting a protective order, such discretion is not without bounds. *In re Collins*, 286 S.W.3d 911, 919 (Tex. 2009) (orig. proceeding). The party seeking a protective order must show particular, specific, and demonstrable injury by facts sufficient to justify a protective order. *Id*.

**Tax Returns**

We first address Relator's contention that RPIs are not entitled to his personal tax returns, as requested in category four, absent a showing that they are relevant and unavailable through less intrusive means. Relator represents that he previously produced (1) the 2002 tax return for Walter's estate, (2) 2002, 2003, 2004, 2005, and 2006 tax returns for the Walter Fuller Mason Residuary Trust, (3) the 2006 tax return for Elizabeth's estate, (4) Relator's 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019 tax returns, and (5) 2017, 2018, and 2019 tax returns for the Thomas Fuller Mason Trust.

"Tax returns are treated differently than other types of financial records, as evidenced by the supreme court's expressed 'reluctance to allow uncontrolled and unnecessary discovery of federal income tax returns.'" *In re Beeson*, 378 S.W.3d 8, 12 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding) (quoting *Hall v. Lawlis*, 907 S.W.2d 493, 494–95 (Tex. 1995)). "This is because federal income tax returns are considered private and the protection of that privacy is of constitutional importance." *Id*. Sacrificing such privacy "should be 'kept to the minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy.'" *Id*. (quoting *Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962)). Consequently, when a resisting party objects to the production of tax returns, the burden shifts to the party seeking to obtain the documents to show that the returns are relevant and material to the issues in the case. *Id*. "Tax returns are not material if the requesting party can obtain the same information from another source." *Id*.

Once Relator filed his motion for protection in which he challenged production of the tax returns, the burden shifted to RPIs to show that the returns are relevant and unavailable through

6

other, less intrusive means. *See id.*; *see also* **In re Holman**, No. 12-21-00145-CV, 2021 WL 5237945, at \*5 (Tex. App.—Tyler Nov. 10, 2021, orig. proceeding) (mem. op.). Relator's motion reflects that he previously produced tax returns regarding Walter's estate and the residuary trust, as well as redacted personal tax returns. The record does not indicate that RPIs filed a response to Relator's motion. At the hearing on Relator's motion, Relator represented to Respondent that he produced tax returns. RPIs' counsel responded as follows:

> …on the issue of, you know, we provided the tax returns so we ought not to have to give any bank statements, tax returns don't capture where the property he claims on the tax return or that he deals with on the tax return, where it originated. It's just a snapshot in time showing income and what he claims to be any deduction for that income. It does not show whether any of those properties he's now put into one of these other estates or one of these accounts actually came through the estate of his father. For instance, if the property was in the estate of his grandfather and then went through, then we need to know where it went when it hit the father's estate and how it was split out. I'm sorry. Grandfather to the father. And how it splits out. That's what this discovery is tailored to do.
>
> To say, I gave you the tax returns doesn't tell me anything. It doesn't tell me where that property came from, what the source of the title of that property was, because it could very well be in the estate that we are interested in … We had the right -- as to these properties we know about, here's an agreement, but that's without prejudice to our right to discover whether there are other properties that they owe us an accounting on. And so that's -- that actually doesn't lay with their entire motion for protection.

RPIs presented testimony from Tony Morgan, a certified public accountant who reviewed Relator's preliminary and supplemental accountings. Morgan's testimony reflects that he studied tax returns during his review. He testified to wanting more information, such as that covered by the subpoena, to prepare an accounting in accordance with accounting principles and the estates code. He explained that Relator's preliminary and supplemental accountings and the documents they refer to were not sufficient for preparing such an accounting:

> You need to be able to look at an accounting and say, here's what we started with; here's what it's worth; here's everything we took in during the administration. Here's what we spent. Here's what we distributed property and cash. Here's what's left, and here's who it belongs to. And I can't do that from this.

Morgan further testified that he had not reviewed all the documents produced in the days preceding the hearing. But he did determine how Relator divided certain royalties by viewing IRS form 1099s. In their mandamus response, RPIs acknowledge that Morgan's opinions were partially based on records from an accounting firm "and included information revealed by tax

returns filed by [Relator] as Executor of Walter's estate and tax returns filed by [Relator] individually."

Accordingly, the record suggests that Relator did produce at least some of the requested tax returns. But as for any unproduced returns, assuming they are relevant, RPIs failed to demonstrate that the returns are material, i.e., not available through other channels. *See Holman*, 2021 WL 5237945, at *6; *In re Sullivan*, 214 S.W.3d 622, 625 (Tex. App.—Austin 2006, orig. proceeding) (State not entitled to production of tax returns where it "did not attempt to use (or explain why it could not use) interrogatories, depositions, or any other discovery device to follow-up its initial discovery request or further explore the bases for Sullivan's calculations"); *see generally Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1992) (per curiam) (orig. proceeding) (trial court abused discretion by ordering production of tax returns when relator previously produced annual reports and there was no justification for requiring the production of the same information in different form). RPIs argue that Relator "never offered [RPIs] (or the trial court) any 'less-intrusive' alternative to producing his tax returns – he simply has refused to produce them or provide any substantially similar documentation that would reflect the complete information that would appear on his tax returns." But again, the record indicates that Relator produced some tax returns and numerous other documents. RPIs do not explain why other financial documents, along with the returns and other documents they already possess, would be insufficient sources of the information they seek, particularly given that Morgan had not reviewed all the produced documents at the time of the hearing. *See Holman*, 2021 WL 5237945, at *6; *see also In re Long*, No. 06-20-00039-CV, 2020 WL 5028779, at *6 (Tex. App.—Texarkana Aug. 25, 2020, orig. proceeding) (mem. op.) (party seeking tax returns failed to explain whether "backup documentation ordered could reveal information sought from the tax returns" or why she could not use interrogatories, depositions, or other discovery device to obtain information). Because RPIs failed to demonstrate materiality, Respondent abused his discretion by compelling production of tax returns.

**Overbroad**

Relator contends that categories one, two, three, and five are overly broad, having no reasonable limits on the types of documents sought, failing to identify with sufficient particularity the documents requested, and containing no limitations on time and scope.[4]

*Time and Scope*

"[D]iscovery must be reasonably limited in time and geographic scope." *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 489 (Tex. 2014) (per curiam) (orig. proceeding). "Discovery requests that are overbroad in time encompass time periods beyond those at issue in the case." *In re Stagner*, No. 01-18-00758-CV, 2020 WL 370565, at *4 (Tex. App.—Houston [1st Dist.] Jan. 23, 2020, orig. proceeding) (mem. op.). Here, RPIs sued Relator individually, as executor of Elizabeth's estate, and as trustee of the trusts created under Walter's will. Walter died in 2002 and Elizabeth died in 2006. The RPIs' amended petition alleges that "*Upon Walter Fuller Mason's death*, Defendant immediately began a course of conduct to deceive and cheat his children, Plaintiffs herein, of their rightful inheritance." (emphasis added). They allege such misconduct as Relator failed in his role as a fiduciary, misrepresented the parties' respective interests in estate property, converted property, mischaracterized certain estate property, and committed fraudulent acts, all postdating the death of Walter. Accordingly, Relator's alleged wrongful activities apparently occurred after Walter's death in 2002. In RPIs' mandamus response, they allege that "[Relator] failed in his responsibilities to [RPIs] in practically everything he has done *since he began serving as Executor of Walter's estate*" and they acknowledge their need for "…information regarding the full extent of the nature and source of the assets, properties and funds accumulated by [Relator] *since 2002*." (emphasis added).

---

[4] A mandamus petition must contain clear and concise arguments for the contentions made, with appropriate citations to authorities and the appendix or record. *See* TEX. R. AP. P. P. 52.3(a) Fulfilling this duty entails more than proffering mere conclusions; a relator must provide substantive legal analysis supporting the arguments and conclusions. *In re Fitzgerald*, 429 S.W.3d 886, 897 (Tex. App.—Tyler 2014, orig. proceeding). Relator offers little to no substantive discussion of legal principles or controlling authority to explain why these categories are overbroad. Nevertheless, because a discovery request is overbroad as a matter of law when unlimited as to the relevant time, place, or subject matter, a relator need not offer further detail in his objections. *See In re Volt Power, LLC*, No. 12-23-00047-CV 2023 WL 2804430, at *7-8 (Tex. App.—Tyler Apr. 5, 2023, orig. proceeding) (mem. op.) (citing *In re Allstate Cty. Mut. Ins. Co.*, 227 S.W.3d 667, 670 (Tex. 2007) (per curiam) (orig. proceeding)). Accordingly, we will address Relator's complaint to the extent that the categories of requests are overbroad as a matter of law. *See Interest of A.E.*, 580 S.W.3d 211, 219 (Tex. App.—Tyler 2019, pet. denied) (it is not this Court's duty, or even right, to conduct an independent review of the record and applicable law to determine whether there was error; were we to do so, we would be abandoning our role as neutral adjudicators and become an advocate for that party).

But as written, categories one, two, three, and five require Relator to produce documents no matter how remote. "Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad." *CSX Corp.*, 124 S.W.3d at 152. "While courts often hold that requests for thirty or fifty years' worth of information are fishing expeditions, even requests for five years' worth of information have been held overbroad" when the request exceeds the relevant time period. *Stagner,* 2020 WL 370565, at *4 (request for more than ten years of information exceeded relevant time period of 2010 to 2016 that was at issue in underlying litigation); *see Allstate Cty. Mut. Ins. Co.*, 227 S.W.3d at 669. Because categories one, two, three, and five are not expressly limited to a specific time period, they essentially encompass decades old documents. Absent a temporal limitation, these categories are overbroad as a matter of law and the presentation of evidence was unnecessary to decide whether the requests were overbroad. *See Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 226; *see also In re Deere & Co.*, 299 S.W.3d 819, 821 (Tex. 2009) (per curiam) (orig. proceeding) ("Because compliance with the trial court's order could require Deere to produce documents going back decades, neglecting to include a reasonable time limit was an abuse of discretion"); *CSX Corp.*, 124 S.W.3d at 152; *United Fire Lloyds*, 578 S.W.3d at 580; *Brookshire Grocery Co.*, 2006 WL 2036569, at *2.

Additionally, categories one and three contain no geographic location.[5] The absence of a geographic limitation renders categories one and three overbroad as a matter of law. *See Nat'l Lloyds Ins. Co.*, 449 S.W.3d at 489; *see CSX Corp.*, 124 S.W.3d at 152 (discovery orders requiring document production from unrelated locales are impermissibly overbroad); *see generally In re Contract Freighters*, 646 S.W.3d 810, 815 (Tex. 2022) (per curiam) (orig. proceeding) (requests for USDOT records from all fifty states over five-year period were overbroad as matter of law); *see also Hall*, 909 S.W.2d at 492 (twenty-state search for documents over five-year period was overbroad as matter of law). Category five includes the entire State of Texas. Morgan testified that there was no other way to ask for any document that Relator possesses to show he paid property tax anywhere in Texas. Yet, RPIs alleged that Walter was a longtime resident of Rusk County, Texas, resided in Henderson (which is located in Rusk

___

[5] Relator does not expressly challenge the lack of geographic limitation; however, we address it because the categories are overbroad on their face and because Relator's complaint that the requests are unlimited as to scope encompasses the lack of a geographic limit.

10

County), and acquired several tracts of land. Their pleadings do not indicate that Walter owned property in any other Texas county or counties. Accordingly, category five is overbroad to the extent it seeks information from counties other than Rusk County because the pleadings do not reflect that any property in other Texas counties is at issue. *See Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 226; *see also CSX Corp.*, 124 S.W.3d at 152; *United Fire Lloyds*, 578 S.W.3d at 580; *Brookshire Grocery Co.*, 2006 WL 2036569, at *2.

Relator also complains that category five fails to state what is meant by "Mason Estate, his personal, etc."[6] "A request for all evidence that supports an opposing party's allegations, but which does not identify any particular class or type of documents, is an improper request to be allowed to generally peruse all evidence the opposing party might have; such a request is vague and overbroad." *In re Master Flow Valve Inc.*, 485 S.W.3d 207, 218 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding). "Mason Estate, his personal, etc." simply encompasses too broad a class of documents and, consequently, constitutes an improper attempt to peruse all evidence that Relator might have regarding property taxes.

*Relevance*

Relator maintains that: (1) category one seeks irrelevant information because RPIs were not beneficiaries of Elizabeth's estate, Relator is the sole beneficiary of Elizabeth's estate, and RPIs have not shown they are beneficiaries of T.O.'s estate; (2) category two is not relevant, as requests for his personal finances "squarely fit the definition of harassment and are an invasion of his personal privacy rights;" (3) category three seeks information outside the scope of discovery because Relator inherited some oil and gas interests from Elizabeth, to which the RPIs have no claim; and (4) category five seeks irrelevant information because Elizabeth's estate and Relator's personal finances are not within the scope of discovery. RPIs contend that their pleadings "implicated the need for fulsome discovery into [Relator's] financial dealings as both an executor and as a trustee over properties and funds that were owned by both he and [RPIs]." According to RPIs, such "financial dealings involved deception, self-dealing, failures to disclose information and outrageous breaches of fiduciary duties owed to [RPIs] that resulted in the commingling of their assets with [Relator's] own personal properties and funds." They maintain that to satisfy their burden of proving that commingling, they need to "delve into the dealings

<hr>

[6] Relator asserts the same complaint regarding category four, but we do not address it given our conclusion that RPIs have not shown entitlement to discovery of tax returns. *See* TEX. R. APP. P. 47.1.

and personal finances of [Relator] since that is where proof of the commingling could be most readily found." RPIs' counsel elicited Morgan's testimony that the five categories could not be reworded or narrowed because "you're dealing with an unknown. We don't know what we started with. And these are basically just saying show us and prove to us with documentation what we started with."

A discovery request is overbroad when it encompasses subject matters that are not relevant to the case in which the discovery is sought. *See **Nat'l Lloyds Ins. Co.***, 507 S.W.3d at 226. Such requests are overly broad as a matter of law. ***United Fire Lloyds***, 578 S.W.3d at 580. The claims at issue in this case are breach of fiduciary duty, conversion, and partition. RPIs' claims as pleaded, regardless of whether they were beneficiaries of T.O.'s or Elizabeth's estates, include allegations (1) against Relator in his individual capacity, as executor of Elizabeth's estate, and as trustee, (2) that Relator engaged in conduct to deceive and cheat RPIs out of their inheritance, such as (a) convincing Elizabeth to relinquish her right as executrix of Walter's estate, (b) mischaracterizing property Walter inherited from T.O., as community property, thereby impacting RPIs' respective interests, (c) misrepresenting RPIs' interests, as well as his own, and pocketing money to which he was not entitled, (d) engaging in fraudulent conveyances to himself and others, and improper division of sale proceeds, and (e) collecting oil and gas royalties that he fraudulently obtained.[7] However, RPIs' discovery requests are not reasonably tailored to their claims or the factual circumstances of the case.

Category one seeks all documents related *in any way* to personal, real, or mixed properties once owned by T.O., Walter, and Elizabeth. This request exceeds the pertinent subject matter by including documents related to property that was never subject to Walter's or Elizabeth's estates. Category two seeks all documents from *any financial institution of any kind* in Rusk County in which Relator has an interest. This encompasses Relator's personal financial information that has no relation to the pertinent issues in the case. Category three seeks all documents related to *any and all oil, gas, and other minerals* in which Relator has an interest of *any kind whatsoever*. This impermissibly includes any personal interests of Relator's that are wholly unrelated to any estate properties in which he derived oil, gas, or other mineral interests and that predate Walter's death. Category five seeks information regarding *all property taxes* on

---

[7] We decline to address the RPI's capacity to sue or standing in the context of this original proceeding.

real estate or properties *of whatsoever kind* that Relator paid to any taxing authority in Rusk County or any Texas county. But this necessarily encompasses taxes that Relator paid on properties apart from those associated with Walter's or Elizabeth's estates and in which commingling could have occurred. That RPIs may need to acquire information for purposes of their commingling allegation does not authorize document production "simply to explore." **Hall**, 909 S.W.2d at 492. Their requests must still be reasonably tailored to include only matters relevant to the case. **CSX Corp.**, 124 S.W.3d at 152. Because categories one, two, three, and five could have been more narrowly tailored as to subject matter, they are overbroad as a matter of law. *See* **In re Volt Power, LLC**, No. 12-23-00047-CV, 2023 WL 2804430, at \*9 (Tex. App.—Tyler Apr. 5, 2023, orig. proceeding) (mem. op.).

### Summation

"[A] party's discovery requests may not be so vague, ambiguous and overly broad as to amount to a fishing expedition." **In re Mireles-Poulat**, No. 09-21-00333-CV, 2022 WL 709871, at \*3 (Tex. App.—Beaumont Mar. 10, 2022, orig. proceeding) (per curiam) (mem. op.). Because categories one, two, three, and five are overbroad as a matter of law, Respondent abused his discretion by ordering Relator to respond to these categories of documents without limitations as to time, geographic scope, and subject matter.

## Unduly Burdensome

Relator maintains that RPIs' requests are unduly burdensome and harassing. However, whether a discovery request is overbroad is distinct from whether it is burdensome or harassing. **Nat'l Lloyds Ins. Co.**, 449 S.W.3d at 488. The party resisting discovery cannot simply make conclusory allegations that the requested discovery is unduly burdensome or unnecessarily harassing. **In re Alford Chevrolet-Geo**, 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding). Rather, a party objecting or asserting a privilege must present any evidence necessary to support the objection or privilege. **In re CI Host, Inc.**, 92 S.W.3d 514, 516 (Tex. 2002) (orig. proceeding); TEX. R. CIV. P. 193.4(a). Any party who seeks to exclude matters from discovery on grounds that the requested information is unduly burdensome, costly, or harassing to produce, has the affirmative duty to plead and prove the work necessary to comply with discovery. **Indep. Insulating Glass/Southwest, Inc. v. Street**, 722 S.W.2d 798, 802 (Tex. App.—Fort Worth 1987, orig. proceeding). Here, Relator attached no evidence to his motion for protection that would demonstrate that the requests are unduly burdensome or harassing. Nor did Relator offer such

evidence at the hearing on his motion. Any arguments made by his counsel do not constitute evidence. *See* **Clayton v. Wisener**, 169 S.W.3d 682, 684 (Tex. App.—Tyler 2005, no pet.).

Absent evidence demonstrating that the requested discovery is unduly burdensome or harassing, Respondent could not make an informed judgment on whether to limit discovery or place the cost for complying with the discovery. *See* **United Fire Lloyds**, 578 S.W.3d at 581; **Street**, 722 S.W.2d at 802; *see also* **Alford Chevrolet-Geo**, 997 S.W.2d at 184 (relators failed to support complaints of burdensomeness and harassment with anything more than general allegations; without more detailed explanation and proof, relators did not meet basic requirements for limiting scope of discovery under rules of civil procedure). Because Relator failed in his burden of establishing that the discovery requests are unduly burdensome or harassing, Respondent did not abuse his discretion by failing to make a finding of undue burden.

## Protective Order

Having determined that requests one, two, three, and five are overbroad and RPIs failed to show entitlement to tax returns as requested in category four, we conclude that Respondent abused his discretion by ordering Relator to produce documents responsive to category four and to categories one, two, three, and five without limitation. Nevertheless, we also conclude that Relator presented no evidence in his motion for protection, or at the hearing thereon, to establish particular, specific, and demonstrable injury by facts sufficient to justify a protective order barring the discovery in its entirety. *See* **Collins**, 286 S.W.3d at 919; *see also* **Alford Chevrolet-Geo**, 997 S.W.2d at 181 ("party must produce some evidence supporting its request for a protective order"); **In Matter of Issuance of Subpoenas Depositions of Bennett**, 502 S.W.3d 373, 377 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding) (trial court abuses discretion by limiting discovery absent some evidence supporting request for a protective order). At most, Relator was entitled to an order placing limitations on the requested discovery. *See* Tex. R. Civ. P. 192.6(b)(1)-(2). Thus, Respondent did not abuse his discretion by failing to grant a protective order in Relator's favor.

**DISPOSITION**

Based upon our review of the record and the foregoing analysis, we conclude that Respondent abused his discretion by ordering Relator to respond to categories one, two, three, and five without limitation and by ordering Relator to respond to category four. Accordingly, we

14

*conditionally grant in part* Relator's petition for writ of mandamus. We direct Respondent to (1) vacate his May 10, 2023, order denying Relator's motion for protection and ordering Relator to respond to the five categories, and in its stead, (2) to issue an order imposing limits on categories one, two, three, and five identified in RPIs' March 23, 2023 subpoena for hearing, and compelling Relator to respond to only categories one, two, three, and five, as limited. Relator's petition is *denied* in all other respects. We *lift* our stay of May 19, 2023.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered July 21, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 21, 2023**

**NO. 12-23-00138-CV**

**THOMAS FULLER MASON,**
Relator
V.

**HON. J. CLAY GOSSETT,**
Respondent

## ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by Thomas Fuller Mason; who is the relator in appellate cause number 12-23-00138-CV and the defendant in trial court cause number 2020-160, pending on the docket of the 4th Judicial District Court of Rusk County, Texas. Said petition for writ of mandamus having been filed herein on May 19, 2023, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, ***conditionally granted in part***.

And because it is further the opinion of this Court that the trial judge will act promptly to (1) vacate his May 10, 2023, order denying Relator's motion for protection, and in its stead, (2) to issue an order imposing limits on categories one, two, three, and five identified in RPIs' March 23, 2023 subpoena for hearing and compelling Relator to respond to only

16

categories one, two, three, and five, as limited; the writ will not issue unless the HONORABLE J. CLAY GOSSETT fails to comply with this Court's order within ten (10) days from the date of this order.  The petition is *denied* in all other respects.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*